UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

```
_____
                                    )
29 SYLVAN, LLC and 33 SYLVAN, LLC,  )
                                    )
          Plaintiffs,               )
                                    )
     v.                             )       C.A. No. 21-228 WES
                                    )
TOWN OF NARRAGANSETT, CHRISTINE     )
SPAGNOLI, alias, in her official    )
capacity as the Narragansett        )
Finance Director, ANTHONY L.        )
SANTILLI, JR., alias, in his        )
official capacity as the            )
Narragansett Building Official,     )
                                    )
          Defendants.               )
_____)
```

**MEMORANDUM AND ORDER**

WILLIAM E. SMITH, District Judge.

In this case about the timing of zoning restrictions and building permits in the fast-growing seaside town of Narragansett, Plaintiffs, 29 Sylvan, LLC and 33 Sylvan, LLC, have filed a Motion for Partial Summary Judgment as to Liability and for Entry of Separate and Final Judgment Against Defendants as to Liability ("Motion"), ECF No. 30, and Defendants, the Town of Narragansett ("the Town"), Christine Spagnoli, the Narragansett Finance Director, and Anthony L. Santilli, Jr., the Narragansett Building Official, have responded with their own Cross-Motion for Summary Judgment and Objection to Plaintiffs' Partial Motion for Summary Judgment ("Cross-Motion"), ECF No. 32. After a hearing and careful

1

consideration of the written filings, for the following reasons, the Court DENIES Plaintiffs' Motion and GRANTS IN PART and DENIES IN PART Defendants' Cross-Motion.  What remains of Plaintiffs' case is one count for violation of the Narragansett Home Rule Charter.  There is no longer a federal question so the case should and will be returned to state court from which it was removed.

I.    BACKGROUND

Plaintiffs 29 Sylvan, LLC and 33 Sylvan, LLC[1] purchased the properties located on 29 Sylvan Road and 33 Sylvan Road in Narragansett, Rhode Island, respectively, on July 3, 2018.  Pls.' Statement Undisputed Facts Supp. Mot. for Partial Summ. J. as to Liability ("PSUF") ¶¶ 1-2, ECF No. 31.  Plaintiff 29 Sylvan, LLC applied for a building permit on September 18, 2019, and Plaintiff 33 Sylvan, LLC applied on December 4, 2019.  PSUF ¶¶ 3-4; Defs.' Statement Additional Undisputed Facts Supp. Cross-Mot. Summ. J. and Obj. Pls.' Mot. for Partial Summ. J. ("DSUF") ¶¶ 9, 12, ECF No. 33.  Both properties are located in zoning district R-10.[2] DSUF ¶¶ 8, 11.

---

[1] Both Plaintiffs are Rhode Island limited liability companies engaged in the business of purchasing, selling, and leasing residential, commercial, and mixed-use real estate.  Defs.' Statement Additional Undisputed Facts Supp. Cross-Mot. Summ. J. and Obj. Pls.' Mot. for Partial Summ. J. ("DSUF") ¶¶ 4-5, ECF No. 33.

[2] "R-10" is the zoning code for the high-density residential zoning district.  DXM, Town of Narragansett, R.I., Comprehensive Plan: Baseline Report (2017) 26, ECF No. 33-1.  The R-10 zoning district contain 10,000 square feet single family lots and is

For at least twenty years, the Town has hosted both seasonal renters during the summer and college students during the school year.  Id. ¶ 1.  A quarter of the housing units in Narragansett are rented for seasonal use.  Id.  The Town has experienced issues associated with seasonal rentals including "noise complaints, property abuse, and overcrowding."  Id. ¶ 2.  Developers, like these Plaintiffs, have been buying property to build large homes for primarily commercial rental purposes.  Id. ¶¶ 3, 6.

In response to a phone call from a town resident, Captain Kevin Tuthill of the Narragansett Fire Department ("NFD") researched the relevant fire codes applicable to large homes used solely for rental purposes.  Id. ¶ 14; PSUF ¶¶ 5-7.  In a letter to NFD Fire Chief Scott Partington, Captain Tuthill stated that, based on the relevant fire and life safety codes, "any property renting six or more bedrooms . . . shall be classified as a lodging and rooming house."  DSUF ¶ 14.

---

"served by, or adjacent to, a public water system, plus areas where similar residential development appears desirable."  Id.

R-40 zoning district "is a moderate to low-density residential zone with a minimum lot size of 40,000 square feet 'characterized by open space interspersed with residential and agricultural land use.'"  DSUF ¶ 27 (quoting DXM at 26).  R-80 zoning district "is a low-density residential zone with a minimum lot size of 80,000 square feet and 'severe physical limitations for development, or which are within or adjacent to wetlands, intertidal zones, coastal ponds, rivers or watersheds."  Id. ¶ 26 (quoting DXM at 26).

Residents raised concerns to the Narragansett Town Council over Plaintiffs' purchases of the properties. Id. ¶ 15; PSUF ¶¶ 8-10. Councilman Richard Lema of the Narragansett Town Council drafted a proposed Emergency Ordinance ("EO") and placed it on the agenda for the next meeting. PSUF ¶ 12; DSUF ¶¶ 16-17. The proposed EO placed a 60-day moratorium on Town agencies from acting on or processing new or incomplete building permit applications. PSUF ¶ 20; DSUF ¶¶ 21-22. The intention of the EO was to allow the Town to review, and potentially revise, the Town's Code of Ordinances. DSUF ¶ 22. The draft EO declared the emergency pursuant to Article 2 of the Narragansett Home Rule Charter. Id. ¶ 20 (citing PXD, Memorandum from Councilman Lema to Town Council (Jan. 13, 2020), ECF No. 31-1).

In a memorandum in support of the EO, Councilman Lema stated the EO "provid[ed] for a moratorium on building and development, under the provisions of Section 2-1-9(b) of the Town Charter." Id. ¶ 16; PSUF ¶ 12. Also attached to the memorandum was Captain Tuthill's letter explaining that "residential areas of the town are under threat of excessive impact as a result of the construction of single-family homes with six or more bedrooms with the sole purpose of renting these residences for profit." DSUF ¶ 17; see PSUF ¶ 14. The EO further identified the Town Council's concerns with the commercial use of rental properties: safety of the buildings' occupants, traffic, parking congestion, emergency

4

access, and property values.  PSUF ¶ 13 (citing PXD); DSUF ¶ 18.
Town Council President Matthew Mannix testified that the "primary
reason" for the EO was to prevent Plaintiffs' planned construction
which he asserted was "egregious" and "the straw that broke the
camel's back."  PSUF ¶ 17.

The Town passed the EO on January 21, 2020.  Id. ¶ 20; DSUF
¶ 21.  The EO was set to expire on March 21, 2020.  PSUF ¶ 20.  As
of January 21, 2020, the Town's Building Official had not deemed
Plaintiffs' building permit applications complete for either
property.[3]  DSUF ¶ 23.  In response to a separate action, Defendants
entered into a consent order excluding the application of the EO
to single-family homes of four bedrooms or less and properties
located in R-40 and R-80 zoning districts.  PSUF ¶¶ 21-22 (citing
PXJ, Consent Order, Hayes v. Town of Narragansett, No. WC-2020-
0047 (R.I. Super. Ct. Jan. 31, 2020), ECF No. 31-1.  A month and
a half later, the Town Council voted to send a proposed "Bulk
Zoning Ordinance" to the Planning Board for review and
recommendation in time for the March 30, 2020, Town Council
meeting.  Id. ¶ 23.  The proposed "Bulk Zoning Ordinance" limited
the size of single-family homes in certain zones based on floor

---

[3]Plaintiffs purportedly dispute this fact but do so on the
basis that the fact is based on a document that Defendants withheld
from discovery as privileged.  Pls.' Statement Disputing Certain
of Defs.' Additional Undisputed Facts ("PSDF") 2, ECF No. 37.
Plaintiffs do not dispute the actual veracity of Defendants'
assertion.  Therefore, the fact is not in dispute.

area, even if the structures complied with dimensional restrictions in that zone. Id. On March 20, 2020, the Town Council met and extended the EO to April 20, 2020. Id. ¶¶ 28-31.

Soon after the Town Council proposed the "Bulk Zoning Ordinance," Plaintiffs filed an action in state court alleging the EO violated state and local law as well as their rights to equal protection, substantive due process, and procedural due process under the Rhode Island Constitution. Id. ¶¶ 24-25. Several months after a hearing, the state court issued a temporary restraining order that enjoined Defendants from considering the "Bulk Zoning Ordinance," kept the moratorium in place, and required Plaintiffs to "submit all paperwork necessary for the Town's review of Plaintiffs' pending permit applications." PXL, Order, 29 Sylvan, LLC v. Town of Narragansett, No. WC-2020-0112 (R.I. Super. Ct. June 11, 2020), ECF No. 31-1; see PSUF ¶ 27.

Plaintiffs made attempts to submit the necessary paperwork for the building permit applications, see PSUF ¶¶ 34-38, but the parties dispute when the applications became complete, see Defs.' Statement Disputed Facts ("DSDF") 2, ECF No. 34. Further, Plaintiffs claim that Defendants purposefully delayed the review of their applications, see PSUF ¶¶ 35-40, 49-54, a claim Defendants dispute, see DSDF 2-3.

The state court issued a preliminary injunction on November 13, 2020, enjoining the EO's enforcement. PXM, Decision, 29

Sylvan, LLC v. Town of Narragansett, No. WC-2020-0112 (R.I. Super. Ct. Nov. 13, 2020), ECF No. 31-1; see PSUF ¶ 41.  The state court found Plaintiffs demonstrated a likelihood of success on their respective claims under the Rhode Island Constitution, the Town's Home Rule Charter, and the Rhode Island Comprehensive Planning and Land Use Act, R.I. Gen. Laws 45-22.2-13(e) ("Section 13(e)").  PXM at 8-30; PSUF ¶¶ 41-47.  The injunction further required the Town to process Plaintiffs' building permit applications.  PXM at 35-36; PSUF ¶ 48.

The Town's Building Official issued building permits for both properties on December 18, 2020.  DSUF ¶ 25.

Two months later, Plaintiffs amended their complaint to include claims under the U.S. Constitution.  PSUF ¶ 57; see Compl., ECF No. 1-1.  Defendants promptly removed the case to federal court.  Defs.' Notice Removal, ECF No. 1.  Plaintiffs' Complaint states claims under the Equal Protection clauses for both the U.S. Constitution (Count VII) and the R.I. Constitution (Count I); Substantive Due Process for both the U.S. Constitution (Count VI) and the R.I. Constitution (Count II); Procedural Due Process for both the U.S. Constitution (Count VIII)[4] and the R.I. Constitution

---

[4] Plaintiffs misidentify their Procedural Due Process claim under the U.S. Constitution as "Count VII."  Compl. 26, ECF No. 1-1.

(Count III); Section 13(e) (Count IV); and Section 2-1-9 of the Narragansett Home Rule Charter (Count V).

## II.  LEGAL STANDARD

"Summary judgment is proper when the pleadings, discovery, and affidavits, show that 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Grossman v. Martin, 566 F. Supp. 3d 136, 142 (D.R.I. 2021) (quoting Fed. R. Civ. P. 56).  When reviewing cross-motions for summary judgment, the Court "consider[s] each motion separately, drawing all inferences in favor of each non-moving party in turn." AJC Int'l, Inc. v. Triple-S Propiedad, 790 F.3d 1, 3 (1st Cir. 2015) (quoting D & H Therapy Assocs., LLC v. Bos. Mut. Life Ins. Co., 640 F.3d 27, 34 (1st Cir. 2011)).  The Court must decide "whether either of the parties deserves judgment as a matter of law on facts that are not disputed." Dahua Tech. USA Inc. v. Feng Zhang, 988 F.3d 531, 539 (1st Cir. 2021) (internal quotation marks omitted) (quoting Fidelity Co-op. Bank v. Nova Cas. Co., 726 F.3d 31, 36 (1st Cir. 2013)).

## III.  DISCUSSION

As an initial matter, the Equal Protection and Due Process guarantees under the federal and state constitutions are coextensive and analogous.  As such, Plaintiffs' federal and state constitutional claims do not require separate analyses.  Pls.' Mem. Supp. Mot. Partial Summ. J. as to Liability ("Pls.' Mem.") 8-

9, ECF No. 30-1; Defs.' Mem. Supp. Cross-Mot. Summ. J. and Obj. Pls.' Mot. for Partial Summ. J. ("Defs.' Mem.") 10 n.2, 17, ECF No. 32-1.

A. Equal Protection (Counts I & VII)

The U.S. Constitution prohibits any state from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1; see also R.I. Const. art. I, § 2. The parties agree that, because Plaintiffs have not alleged the EO employs a suspect classification or infringes on a fundamental right, rational basis review applies. Pls.' Mem. 9-10; Defs.' Mem. 10. This level of judicial scrutiny only requires there to be a "rational relationship" between the challenged action and "some legitimate governmental purpose." Armour v. City of Indianapolis, 566 U.S. 673, 680 (2012) (quoting Heller v. Doe, 509 U.S. 312, 319-20 (1993)).

As a threshold matter, to have a successful "class of one" claim under Equal Protection – that is a "differential treatment for reasons unique to him, rather than because of his membership in any group" - the plaintiff must establish he "has been intentionally treated differently from others similarly situated." Snyder v. Gaudet, 756 F.3d 30, 34 (1st Cir. 2014) (quoting Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)). "To bear their burden of showing that others are 'similarly situated,' class-of-one plaintiffs must 'identify[] comparators' who are 'similarly

situated in all respects relevant to the challenged government action.'" Back Beach Neighbors Comm. v. Town of Rockport, 63 F.4th 126, 130-31 (1st Cir. 2023) (quoting McCoy v. Town of Pittsfield, 59 F.4th 497, 507 (1st Cir. 2023)). "Plaintiffs must show an 'extremely high degree of similarity' between themselves and those comparators." McCoy, 59 F.4th at 507 (quoting Cordi-Allen v. Conlon, 494 F.3d 245, 251 (1st Cir. 2007)). Although this standard does not require "an 'exact correlation,'" there must nonetheless be "sufficient proof on the relevant aspects of the comparison to warrant a reasonable inference of substantial similarity." Cordi-Allen, 494 F.3d at 251 (quoting Tapalian v. Tusino, 377 F.3d 1, 6 (1st Cir. 2004)). As such, a class-of-one plaintiff must demonstrate that the comparators "have engaged in the same activity vis-à-vis the government entity without such distinguishing or mitigating circumstances as would render the comparison inutile." Id.; see Barrington Cove Ltd. P'ship v. R.I. Hous. & Mortg. Fin. Corp., 246 F.3d 1, 8 (1st Cir. 2001) ("In other words, apples should be compared to apples." (quoting Dartmouth Rev. v. Dartmouth Coll., 889 F.2d 13, 19 (1st Cir. 1989))).

"At the summary judgment stage, [the plaintiff] has both the 'burdens of production and persuasion' to identify – 'backed by competent evidence' – 'instances where persons similarly situated in all relevant respects were treated differently.'" McCoy v. Town of Pittsfield, 565 F. Supp. 3d 125, 142 (D.N.H. 2021), aff'd

59 F.4th 497 (1st Cir. 2023) (quoting Cordi-Allen, 494 F.3d at 250-51); see also Gianfrancesco v. Town of Wrentham, 712 F.3d 634, 640 (1st Cir. 2013) ("[A] class-of-one plaintiff bears the burden of showing that his comparators are similarly situated in all respects relevant to the challenged government action."). A plaintiff's burden is "significant" and is "enforced with particular rigor in the land-use context because zoning decisions 'will often, perhaps almost always, treat one landowner differently from another.'" Cordi-Allen, 494 F.3d at 251 (quoting Olech, 528 U.S. at 565 (Breyer, J., concurring)). "It is inadequate merely to point to nearby parcels in a vacuum and leave it to the municipality to disprove conclusory allegations that the owners of those parcels are similarly situated." Id. at 251.

Plaintiffs contend that two other developers received different treatment when the Town Council entered into a consent order excluding the application of the EO to single-family homes of four bedrooms or less and properties located in R-40 and R-80 zones. Pls.' Mem. 12-13; see PSUF ¶¶ 21-22; PXJ. Plaintiffs' argument stops there. See Pls.' Mem. 12-13. Other than their blanket assertion, Plaintiffs offer no arguments or evidence to meet their significant burden of showing how their properties in the R-10 zoning district are similarly situated to properties located in R-40 and R-80 zoning districts. In other words,

Plaintiffs presume the Court will conclude Plaintiffs' properties are similarly situated.

By taking the similarly situated requirement as a given, Plaintiffs attempt to shift the burden onto Defendants to show that Plaintiffs' properties are <u>not</u> similarly situated.  This is exactly what the First Circuit proscribes in zoning cases.  <u>See</u> <u>Cordi-Allen</u>, 494 F.3d at 251.  It is not Defendants' burden to "disprove conclusory allegations."  <u>Id.</u>  The similarly situated requirement must be "backed by [the plaintiffs'] competent evidence."  <u>Id.</u> at 250.

Still, in reply, Plaintiffs do not offer any evidence to show that their properties are similarly situated to properties zoned in R-40 and R-80.  Rather, Plaintiffs argue, because all "R" zones in Narragansett are exclusively residential zones, properties zoned in R-10 are similarly situated to those zoned in R-40 and R-80.  Pls.' Reply Br. Supp. Mot. Partial Summ. J. ("Pls.' Reply") 1-2, ECF No. 36.  That argument is plainly not enough for Plaintiffs to meet their significant burden of showing similarity.[5]

---

[5]Plaintiffs put stock in the facts of <u>Tapalian v. Tusino</u> to support their argument that, like <u>Tapalian</u>, their properties are similarly situated to the properties at issue in the consent order. Pls.' Reply Br. Supp. Mot. Partial Summ. J. ("Pls.' Reply") 5-6, ECF No. 36.  There, the First Circuit upheld a jury determination finding the defendant violated the plaintiff's equal protection rights when he imposed a moratorium on street construction for the winter, contrary to an agreement reached between the plaintiff and the defendant that would have allowed the plaintiff to begin a previously contemplated road construction project, but then issued

12

On the other hand, Defendants go on to describe how the properties zoned in R-40 and R-80 are distinguishable from properties zoned in R-10:

- Zone R-10 is a high-density residential zone, while zones R-40 and R-80 are moderate to low-density zones, respectively. See DSUF ¶¶ 8, 11, 26-27; DXM, Town of

---

a work permit to a different subcontractor for a road construction project on a different road notwithstanding the moratorium. Tapalian v. Tusino, 377 F.3d 1, 3-5 (1st Cir. 2004). The defendant argued that, based on the evidence adduced at trial, the latter road project was not similarly situated to the project planned for the plaintiff. Id. at 6. In particular, the defendant argued the plaintiff's project required heightened construction specifications while the other project did not. Id. The court disagreed that this distinction existed because the town approved a previous construction project for the same road without the heightened specifications. Id. at 6-7.

Tapalian is distinguishable from Plaintiffs' case. First, and most significantly, the First Circuit found that "[t]he evidence adduced at trial did not preclude a rational jury from finding" that the projects were similarly situated. Id. at 6. Here, Plaintiffs have not submitted any evidence for a reasonable jury to even contemplate that the properties in R-10 are similarly situated to those in R-40 and R-80. Second, unlike Plaintiffs who have only pointed out one area of similarity – that the properties at issue are residential properties – the evidence adduced at trial in Tapalian demonstrated that there were similarities in more than just one respect. See id. Third, unlike here, where Plaintiffs' zone R-10 is just being compared to zones R-40 and R-80, the jury in Tapalian was instructed to compare the plaintiff's project "with the projects of other individuals, including the Town of Seekonk and the town contractors." Id. (internal quotation marks omitted). Such a comparison is not being made here and, if the defendant in Tapalian had objected to this instruction and the court issued a different one, the jury may have concluded differently. See id. At bottom, Tapalian is entirely distinguishable from the case at bar.

Narragansett, R.I., Comprehensive Plan: Baseline Report (2017) 26, ECF No. 33-1.

- The minimum lot size for zone R-10 is 10,000 square feet, 40,000 square feet for zone R-40, and 80,000 square feet for R-80.  DSUF ¶¶ 26-27; DXM at 26.

- Properties in zone R-10 are either served by, or adjacent to, a public water system, while properties in zones R-40 and R-80 are not.  DXM at 26.

Moreover, according to the Town's Comprehensive Plan: Baseline Report, R-40 is "[c]haracterized by open space interspersed with residential and agricultural land uses" and zone R-80 has "severe physical limitations for development, or which are within or adjacent to wetlands, intertidal zones, coastal ponds, rivers or watersheds."  Id.  The same Report describes R-10 as "areas where similar residential development appears desirable."  Id.

In sum, in its Motion, Plaintiffs have not met the initial burden of demonstrating a genuine issue of material fact as to whether the properties zoned in R-10 are similarly situated to properties zoned in R-40 and R-80.  Further, Plaintiffs have failed to present evidence to rebut Defendants' arguments that the properties are not similarly situated.  Accordingly, Plaintiffs' Motion is DENIED and Defendants' Cross-Motion is GRANTED as to Plaintiffs' Equal Protection claims (Counts I and VII).

14

B. Substantive Due Process (Counts II and VI)

The Due Process Clause of the Fourteenth Amendment prohibits a state from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1; see also R.I. Const. art. I, § 2. To succeed on a Substantive Due Process claim, however, a plaintiff must identify a constitutionally protected interest. Harron v. Town of Franklin, 660 F.3d 531, 535-36 (1st Cir. 2011). Statutorily created benefits, including a party's entitlement to a building permit, may be a property interest protected by state constitution. D'Ambra v. City of Providence, 21 F. Supp. 2d 106, 109 (D.R.I. 1998) (citing Pitocco v. Harrington, 707 A.2d 692, 695-97 (R.I. 1998)). To demonstrate an entitlement to a "statutorily created benefit" as property, "a person 'must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.'" Peréz-Acevedo v. Rivero-Cubano, 520 F.3d 26, 30 (1st Cir. 2008) (quoting Coyne v. City of Somerville, 972 F.2d 440, 443 (1st Cir. 1992)). A "legitimate" entitlement "must be grounded in some statute, rule, or policy." Id.

The purported property interest at issue here is a product of R.I. General Laws § 45-24-44, which vests an applicant's right to a building permit when an application for development is "substantially complete and [has] been submitted for approval to the appropriate review agency in the city or town prior to

15

enactment of the new zoning ordinance or amendment." R.I. Gen. Laws § 45-24-44(a). Once an applicant's rights have vested, the application must be reviewed "according to the regulations applicable in the zoning ordinance in force at the time the application was submitted." R.I. Gen. Laws § 45-24-44(c). By that point, the job of the building official is merely ministerial. Pitocco, 707 A.2d at 696 (citing R.I. Gen. Laws § 23-27.3-107.1) ("In Rhode Island the local building official is a municipal administrative officer who is bound to follow the zoning ordinance and applicable statutory provisions pursuant to which he or she is authorized to act.").

Plaintiffs argue they had a protected property interest in the building permits. At hearing, Plaintiffs argued they were entitled to the building permits on the day the Town Council passed the EO because the applications were substantially complete. Alternatively, if that is not the operative date, Plaintiffs assert they were entitled to the building permits in May 2020 when they submitted the final plans for both properties. PSUF ¶¶ 37-38. Defendants dispute this and argue, in January 2020, Plaintiffs' applications were still missing material documents, preventing them from being certified as substantially complete. Defs.' Mem. 17-20; see also DXF, Building Permit Application for 29 Sylvan Road, ECF No. 33-1; DXH, Building Permit Application for 33 Sylvan Road, ECF No. 33-1. They also dispute the applications were

16

complete in May 2020 because Plaintiffs failed to submit all the requisite materials and the Town could not act on the applications. DSDF 2.

According to Defendants, under local law, a building permit application is "substantially complete" only when the Town's "building inspection division certifies that the application (for a building permit) is complete." Defs.' Mem. 18 (quoting Narragansett Code of Ordinances, App'x A, § 14.1). In other words, although an applicant may have submitted all the necessary paperwork, under the law of Narragansett, it is not "substantially complete" until the Town Building Official certifies the permit. This argument, however, runs counter to the holding of Pitocco. There, the building official was alleged to have wrongfully and arbitrarily denied the plaintiffs a building permit even though they were legally entitled to one. 707 A.2d at 693-94, 696-97. Assuming Plaintiffs' allegations are true, and the Town's Building Official withheld certification of Plaintiffs' substantially complete building permit applications, under Pitocco, Defendants violated Plaintiffs' Due Process rights because, under state and local law, the Town's Building Official had a ministerial duty to certify those applications. See id. at 696 (explaining that a "local building official . . . is bound to follow the zoning ordinance and applicable statutory provisions pursuant to which he or she is authorized to act"). By not granting the permits when

they had a duty to do so, Defendants violated Plaintiffs' Substantive Due Process rights.  See id.

Given Plaintiffs' evidence suggesting Defendants' delay in issuing the building permits was because of their pretextual animus towards Plaintiffs and Defendants' evidence suggesting Plaintiffs' applications were not complete because they were missing material documents and information, there is a genuine issue of material fact as to whether Plaintiffs had a protected property interest in the building permits.[6]

But, notwithstanding this triable question, Plaintiffs' claim must fail because, even if a jury were to find that Plaintiffs did have a protected property interest, the EO was rationally related to a legitimate government purpose. Under the "forgiving" rational basis standard, "the state will prevail 'so long as it articulates some reasonably conceivable state of facts that could provide a rational basis for the action.'" A.C. v. McKee, 23 F.4th 37, 46 (1st Cir. 2022) (internal alterations omitted) (quoting Donahue v. City of Boston, 371 F.3d 7, 15–16 (1st Cir. 2004)).  As such, "any

---

[6]Plaintiffs also put forward the argument that, because the Town Council did not adhere to Section 13(e) in passing the EO, they did not have the authority to deny Plaintiffs their building permit applications and, therefore, they could not have obtained their property interest in the building permits. Pls.' Reply 9, ECF No. 36.  This argument falls flat as a matter of law because, as will be explained infra Part C, Section 13(e) is not the only source of authority giving Defendants the power to put in place a land use moratorium.

plausible justification [from the municipality] will suffice, and effectively ends the analysis." Donahue, 371 F.3d at 15 (internal quotation marks omitted) (quoting Starlight Sugar, Inc. v. Soto, 253 F.3d 137, 145 (1st Cir. 2001)); see also FCC v. Beach Commc'ns, Inc., 508 U.S. 307, 315 (1993) (explaining that rational basis does "not subject" legislative action "to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data").

Defendants assert several justifications for the EO and for limiting the development of single-family homes with six or more bedrooms for commercial purposes in residential zones. They assert the EO was needed to address increased traffic, parking congestion, emergency access, and decreased property values. Defs.' Mem. 15. They also purport to justify the EO based on concerns over public safety and occupant safety. Id. at 16. Defendants have presented legitimate government purposes that are rationally related to the EO.

Plaintiffs heavily rely on City of Cleburne v. Cleburne Living Center, 473 U.S. 432 (1985) to support their argument that Defendants improperly singled out Plaintiffs in response to neighbors' concerns. Pls.' Mem. 10-13.

Plaintiffs' reading of City of Cleburne is incorrect. There, the Supreme Court reviewed an ordinance requiring a special use permit for the operation of a group home for mentally disabled

individuals under rational basis review.  City of Cleburne, 473 U.S. at 435, 446.  The Court found the ordinance violated Equal Protection "as applied."  Id. at 435.  Cleburne of Cleburne was a fact-specific case that focused on "the discrepant treatment, the burden imposed, and the infirmities of the justifications offered."  Massachusetts v. U.S. Dep't of Health & Hum. Servs., 682 F.3d 1, 10 (1st Cir. 2012).  There, the Supreme Court rejected the purported justifications raised by the city because they had no connection to the group home's residents.  City of Cleburne, 473 U.S. at 448.  As a result, what was left in justifying the special use permit was "irrational prejudice against the mentally [disabled]."  Id. at 450.

City of Cleburne does not stand for the broad proposition, as Plaintiffs suggest, that a legislative body can never consider a community's "negative attitudes."  Pls.' Mem. 11 (quoting City of Cleburne, 473 U.S. at 448).  Instead, as the Supreme Court emphasized in later opinions, government decisionmakers can consider negative attitudes so long as those concerns are substantiated "by factors which are properly cognizable in a zoning proceeding."  Bd. of Trs. of the Univ. of Ala. v. Garrett, 531 U.S. 356, 367 (2001) (quoting City of Cleburne, 473 U.S. at 448).  In other words, the negative attitudes behind government action must be rationally related to a legitimate state interest.  That is exactly what happened here.  In response to the concerns of

residents – i.e., public safety, traffic, sewage issues – the Town enacted the EO.  Unlike <u>City of Cleburne</u>, where the purported justifications bore no relation to the residents of the proposed group home, the justifications put forward by Defendants do have a sufficient relationship to the EO.

Moreover, it matters little that the issues justifying the EO are ones that have been plaguing the Town for many years.  There is no statute of limitation for a municipality to address pressing local issues.  What is pertinent under rational basis review is whether there is a "legitimate governmental objective." <u>Smithfield Concerned Citizens for Fair Zoning v. Town of Smithfield</u>, 907 F.2d 239, 244 (1st Cir. 1990).[7]

In sum, because Plaintiffs cannot establish that the EO lacks a rational basis, Plaintiffs' Motion is DENIED and Defendants' Cross-Motion is GRANTED with respect to Plaintiffs' Substantive Due Process claims (Count II and VI).

---

[7]The Court's rational basis review analysis applies equally to Plaintiffs' Equal Protection claims.  <u>Baker v. Coxe</u>, 230 F.3d 470, 474 (1st Cir. 2000) (citing <u>PFZ Props., Inc. v. Rodriguez</u>, 928 F.2d 28, 32 (1st Cir. 1991)) ("In the field of local permits, the nature of the government conduct (or misconduct) required to establish either a substantive due process or an equal protection claim is so similar as to compress the inquiries into one.").  As such, Plaintiffs' Equal Protection claims would also fail under rational basis review.

C. Section 13(e) (Count IV)

Plaintiffs argue the EO is void *ab initio* because Defendants did not adhere to Section 13(e)[8] by failing to provide notice to

---

[8]The relevant statute states:

(e) A one-time moratorium, for the purpose of providing interim protection for a planned future land use or uses, may be imposed during the twelve (12) months subsequent to the adoption of the local comprehensive plan provided that a change to the zoning ordinance and map has been identified and scheduled for implementation within twelve (12) months of plan adoption.  The moratorium shall be enacted as an ordinance and may regulate, restrict, or prohibit any use, development, or subdivisions under the following provisions:

(1) The moratorium is restricted to those areas identified on the map or maps as required by § 45-22.2-6(b)(2)(iii).

(2) A notice of the moratorium must be provided by first class mail to property owners affected by said moratorium at least fourteen (14) days in advance of the public hearing.

(3) The ordinance shall specify:

   (i) The purpose of the moratorium;

   (ii) The date it shall take effect and the date it shall end;

   (iii) The area covered by the moratorium; and

   (iv) The regulations, restrictions, or prohibitions established by the moratorium.

(4) The moratorium may be extended up to an additional ninety (90) days if necessary to complete a zoning ordinance and map change provided that: (i) The public hearing as required by § 45-24-53 has commenced; and (ii) The chief approves the extension based on a demonstration of good cause.  Said extension shall not be deemed as non-conformance to the implementation schedule.

R.I. Gen. Laws § 45-22.2-13(e).

Plaintiffs of the public hearing where the Town Council adopted the EO.  Pls.' Mem. 13-14.  Plaintiffs asserted that Section 13(e) "is the only statute that provides a municipality with the authority to enact a moratorium related to land use" and that a town's home rule charter may not be inconsistent with Section 13(e).  Pls.' Reply 14-15 (emphasis in original).  In response, Defendants argued Section 13(e) is inapplicable.  Defs.' Mem. 24-28.  They posited Section 13(d) is the statute that governs the Town Council's actions, see id. at 26, and it allows municipalities to "impos[e] limitations on the number of building permits . . . at any time, provided such limitations are consistent with the municipality's comprehensive plan . . . and are based on a reasonable, rational assessment of the municipality's sustainable capacity for growth," R.I. Gen. Laws 45-22.2-13(d).  Section 13(d) "makes clear that [the statute] does not restrain a municipality's broad power to regulate land use."  Defs.' Mem. 27.

In the midst of briefing, the Rhode Island Supreme Court decided Green Development, LLC v. Town of Exeter, which held the General Assembly did not intend for Section 13(e) "to serve as the exclusive method for a town to enact a moratorium."  297 A.3d 931, 939 (R.I. 2023).  The court declined to read Section 13(e) "in a manner that would conflict with the town's authority to enact a moratorium" under the town's charter.  Id.  Plaintiffs agree, both in their sur-reply and at the hearing, that its claim under Section

13(e) is no longer viable as a matter of law.  Pls.' Sur-Reply 7, ECF No. 42.

As such, Plaintiffs' Motion is DENIED and Defendants' Cross-Motion is GRANTED as to Count IV.

D. Procedural Due Process (Counts III and VIII)

Plaintiffs' Procedural Due Process claims hinge on the Town Council's adherence to the notice requirements of Section 13(e). See Pls.' Mem. 16-17; Pls.' Reply 12-14.  As explained above, Green Development held Section 13(e) is not the sole method by which a municipality can enact a land use moratorium, meaning the Town was not required to follow Section 13(e)'s notice requirements to enact the EO.  297 A.3d at 939.  Accordingly, Plaintiffs' Motion is DENIED and Defendants' Cross-Motion is GRANTED with respect to Plaintiffs' Procedural Due Process claims (Counts III and VIII).

E. Section 2-1-9 of the Narragansett Home Rule Charter (Count V)

Defendants declared an emergency under Article 2 of the Narragansett Home Rule Charter which gives the Town Council the authority to make such a declaration.  See PXD, Narragansett Home Rule Charter, § 2-1-9.  Plaintiffs argue the purported "emergency" justifying the EO was not a true emergency and, therefore, the Town Council did not have the authority to enact the EO.  Pls.' Mem. 14-15.  Plaintiffs principally rely on the dictionary definition of "emergency" and aver that the purported emergency

was not "urgent" because the Town has been dealing with the issue for years. Id. at 15. Instead, they argue, the Town Council used a January 2019 letter from the Town Fire Department as "pretext" to target Plaintiffs' building permits. Id. (citing PXK, Letter from Captain K. Tuthill to NFD Chief S. Partington (Jan. 12, 2019), ECF No. 31-1).

Defendants, on the other hand, stress that municipalities have broad latitude in determining whether an emergency exists. Defs.' Mem. 28-30. Defendants rely on the advisory opinion issued by the Rhode Island Supreme Court that stated:

> the police power may be exercised by the state in case of an emergency which the legislature has found to exist as a matter of fact, and which it has declared is causing widespread distress to a large portion of the population with resulting danger to the health, safety or morals of the public generally. Provided that the legislation which authorizes the state or its local subdivisions . . . is temporary and reasonably related to and limited by the duration of the existing and declared emergency.

Opinion to the Governor, 63 A.2d 724, 728 (R.I. 1949). Given the government body's latitude, "every persumption [sic] in its favor is indulged, and only clear and demonstrated usurpation of power will authorize judicial interference with legislative action." Id. at 729 (citation omitted). At a minimum, an emergency declaration must "rest upon findings of fact by the legislature as to the existence of unusual circumstances which . . . endanger the public health, safety or morals." Id. According to Defendants, the EO is "valid, reasonable, and fully enforceable" given that it

articulated the emergency and was supported by factual findings. See Defs.' Mem. 29.

Both parties have submitted enough evidence, viewed in favor of the non-moving party, for a reasonable juror to find either way regarding the Town's claim there was an emergency justifying the EO.

For these reasons, both Plaintiffs' Motion and Defendants' Cross-Motion are DENIED with respect to Count V.

IV.    CONCLUSION

For the reasons stated above, Plaintiffs' Motion for Partial Summary Judgment as to Liability and for the Entry of Separate and Final Judgment Against the Defendants as to Liability, ECF No. 30, is DENIED and Defendants' Cross-Motion for Summary Judgment and Objection to Plaintiffs' Partial Motion for Summary Judgment, ECF No. 32, is GRANTED IN PART and DENIED IN PART.

Plaintiffs' claim under Section 2-1-9 of the Narragansett Home Rule Charter is the only remaining claim.  In its discretion, the Court declines to exercise supplemental jurisdiction over the lone claim.  See 28 U.S.C. § 1367.  Accordingly, Count V is REMANDED to the Washington County Superior Court.

IT IS SO ORDERED.

_____
William E. Smith
District Judge
Date: October 5, 2023